Good morning. May it please the court, my name is Josh Neuville. I represent the appellant in this matter, Ifrah Yassin. And I know the court is familiar with this case. It's been going on quite some time now. This is five and a half years since we filed the matter and there have been a number of related decisions. This is the first time that Ms. Yassin's case stands on its own. And I am grateful for the opportunity to talk with you today just about Ms. Yassin's case. And hopefully we can focus on this very specific issue. And in fact, Officer Weyker foretold today's legal issue more than 11 years ago. On November 13, 2010, while bragging to the St. Paul Pioneer Press about having single-handedly initiated or started the now infamous human trafficking investigation. Are you going outside the record? You know, I am, Your Honor, at the very, very brief moment. Don't do it. Well, it's not to, I'm actually not relying on it. I was going to argue by sort of the fundamental point. So I won't cite the article. Instead, I'll say the fact that Ms. Weyker If you want to quote her as saying something that isn't in the record, don't do it. That's fair, Your Honor. What I will say is that the, it is, and I actually ripped it out of the appendix because I think it's so incredibly helpful. But Ms. Weyker has been aware since 2010 that, or Officer Weyker, I should say, has been aware since 2010 that her federal authority was very limited. That she was acting in a dual capacity. The deputation form that That doesn't get you anywhere. Why is that, Your Honor? And I guess I mean, what does the In cases that say, you know, A, you don't have to be acting within the scope of your federal authority if you were acting under, if you were a federal actor. And that includes even if you're jointly acting. My view of the cases, Your Honor, is actually the opposite. It's that the narrow scope of your federal authority, just like the scope of your private authority, which is none in the context of policing, is such that when you're analyzing, what you're looking for, when you're performing the necessarily fact-bound inquiry of state action, when you're looking for that, that the broad powers, the general powers that you have as a state officer are, a private person wouldn't have those, we'll call them, we'll just call it authority in And they can exceed the scope of their federal deputation and thus be acting in the scope of their state authority. And we've presented a number of cases in which both the Supreme Court and this, this court, and a number of other circuit courts have recognized that proposition. Well, if they're exceeding their state authority and, or state employment and their federal employment. Because I, I doubt what she did here, assuming it's all true, complies with what she's supposed to do as a state officer either. Right. And so that's why the, the state action cases, the color of state law analysis is such that it's to be read with a spirit of liberality or a, that exceeding the scope, but while doing so, of one's authority, but while doing so, clothed in state law is actionable color of law conduct. And so, or state law conduct. The, in this case, you know, Officer I agree, but here's the, here's a problem I'm having with your argument. If, if she's exceeding the scope of both types of employment, but there's more indicia that she's acting as a federal officer than a state officer, why wouldn't we just say, well, 60 percent of the factors go towards federal, 40 percent go towards state, she's federal? Well, first of all, Your Honor, I would say I actually don't think that she was exceeding the scope of her, her state authority. I think that it's quite clear that her state authority was broad and that, that she had the ability to, as a state officer, St. Paul police officer, to do the very things that she did in this case. But to answer your question about how, you know, looking at the indicia, I mean, first of all, I think we actually need to perform the necessarily fact-bound inquiry, the, the fact-intensive analysis as, as you recognized in the first appeal in this matter. That's what I want to, your, your entire brief is premised on the notion that this is, the state actor is a question of fact for a jury. Yes, Your Honor. Give me your Supreme Court case or your Eighth Circuit case that you're relying on because I think that is a completely open issue and all the indicia point toward the Supreme Court would ultimately say, if asked, if required to rule, it's a fact-intensive question of law. Yes, Your Honor. I, I believe most of these, if not all of them, are in our brief. I will check afterwards and if they're not, I'll submit a twenty-eighth statement. Well, you know, the case, you don't, you don't address the issue. Your, your issues presented are that, that I was deprived, my client was deprived of a jury trial on a fact issue. So, Your Honor, the Lugar v. And, and, and Wickersham, for one, out of the D.C. Circuit doesn't address the question, but every fair reading of the, of the, of the discussion is it was a fact-intensive question of law. And that completely changes the analysis. The, well, and just to add to that, the Supreme Court says it's a jurisdiction-type question, which again hints at, at a question of law. So, Your Honor, I'm not aware of a fact-intensive question of law that can be decided. First of all, I'm not entirely sure. Well, how, how about qualified immunity issues? Well, as I say, Your Honor, I'm not entirely sure that These exist all over the place. Every time the, the, the issue of detention under the Fourth Amendment. Your Honor, what I was going to say is I'm not aware of a Supreme Court decision, much less, or I'm sorry, an Eighth Circuit decision, much less a Supreme Court decision that, that calls this a fact-bound, or I'm sorry, a law, a fact-intensive legal question. In fact, my read of the case is, and I can push back to, you know, Burton v. Wilmington Parking Authority, only by sifting facts and weighing circumstances can the non-obvious involvement of the state be attributed its true significance. The first embankment I participated in, in this, in this Court, was a question of whether detention of a, of a traveler at the, at the Kansas City Airport violated the Fourth Amendment. And the three of us had to go and parse through Supreme Court cases. And the best way to do it is when did, when did they use the word conclude and when did they use the word find? And even that they're inconsistent on. But we thought it was obvious from these tea leaves that it was a fact-intensive question of law and a majority of the Court, a different majority than decided the case, held that. So there's at least one Eighth Circuit case which has embanked, defined the question of fact, has defined a fact-intensive question of law. And the Supreme Court does that all the time. They don't like to talk about whether it's law or fact or whether it's law, whether it's for a court or a jury. But if it's a constitutional issue and they're pushed to say, they always say, we get the last word. Understood, Your Honor. What I, what I would add, and I'm going to... So how do we, so let's take, let's assume, assume with me it's, it's a question of law. Now where do we go? Exactly. So the, if we're assuming that, at minimum, it's still fact-intensive. And in order to sift through, in order to do any kind of fact-intensive analysis, we need facts. Mr. Sink, it's not... You know, in a rule, a Rule 12b-1, the lawyers, the lawyers control that. That's a jurisdictional question. And the, and the court, it's, it's a jurisdictional question for the court. Like qualified immunity, it's always for the court, even if there's a full trial of, of, with the, of the merits on, with the jury. And the lawyers have the ability to urge the district court to stop before you decide this threshold question of law. And we need some facts. And I did that, Your Honor. In this very case, I did exactly that. Okay. And, and... And I was over, and I was denied. So the, we went through a motion... So, now, all right, so, so if it's a question of law, what, what, what facts, what was your showing of facts that were, were necessary, that the court had to make findings on before it could decide the issue of law? Well, first of all, I, I wasn't able to show facts outside of what... Where do I go in the pleadings to the district court to see what your showing was? That's, that's the point, Your Honor, is that there was very, we had to rely on what the state or what the, what Officer Weicker's counsel put forward and the underlying criminal matter... The, the district court denied us any discovery in this matter whatsoever. We filed a Rule 56-D motion, asked that the day after, they, the, Officer Weicker sought... Can we get you the docket numbers in the district court so I can see? It, I mean, you, you, you treated this on appeal like it's a question of fact for the jury and that's all the court needed to, needed to know and, and therefore had to deny this summary judgment or dismissal, whichever it did. Um, Your Honor, we, we treated it as a fact-intensive analysis, I agree, and I do think it's a question  Well, but did you treat it, if you, if it was, if it was a Rule 12-B-1 motion to dismiss for lack of personal jurisdiction, those come up all the time and they, they, like qualified immunity, it's helpful to decide them at the start of the case. Yep. And the federal rules and the side decisional law lays out how you get what in effect is a bifurcated evidentiary hearing. You get a, a limit, a hearing limited to the facts that are needed to decide the threshold question of law. And the lawyer has to make a showing to get that. And that was my Rule 50-60 affidavit, my nine-page affidavit that I submitted where I asked the court to hold off on deciding Weicker's summary judgment motion, which was based primarily on qualified immunity, and in fact only referenced state action, this color of law issue that ultimately has us here today at the very end. And the district court denied it with a citation to NZULA, which is a Eighth Circuit case, saying that you can deny discovery for the purposes of performing qualified immunity analysis early on with no additional analysis. But then when Well, that's a good site on this, on this procedural. If it's a, if it's a fact-intensive question of law, that's a very, that's a very pertinent citation. Well, and, and I wanted to, I wanted to ask you about that, because I, I view the, the district court as doing something slightly different, which is, I think the district court was saying, look, you have all the facts you need. And she looked at the facts that you wanted to get through discovery and concluded they really wouldn't help on the federal state distinction. So she said, this case is old. Let's go forward. Everybody knows the relevant facts. Let's just do this. You're right. It's possible that she did that. But there is absolutely no analysis whatsoever in the order denying the motion. And we just can't be sure. And in addition to that, the fact that she, in her order dismissing this case for, for color of law issues, specifically admonished Yassine for not producing evidence that would contradict, you know, or I should say, would support her positions and contradict Officer Weicker's positions. I found it very surprising to receive that admonishment, considering that I asked for the opportunity to conduct discovery and collect said evidence. Let me ask you this. What additionally would you want? You knew, you knew exactly what the deputization paperwork said. You knew exactly what happened on the phone call. You knew who else was on the phone call. You knew how Officer Beeks acted. I, I can't figure out what else would be relevant to the federal state distinction. Well, for one, Officer Weicker's understanding of her own deputation, it's been ten plus years since this conduct occurred in this case, five and a half years since this case was filed. Officer Weicker's never once testified. Ever. That doesn't matter. You know, you just, you just want, you want a discovery on the merits. Your Honor, I do think that the merits... Her understanding, she had federal officers on the phone with her. I'm unaware of any case that says that, that color of law analysis is a, is a threshold matter that must be decided early, at the earliest stage possible, like qualified immunity is. Right. I agree with you. Absolutely. All right. And it turns on the state actor question. I don't think that qualified immunity in, in the, I'm sorry, I don't think that the, that the analysis are the same. We're talking Bivens 1983, right? Well, 1983, Your Honor, not Bivens in this case, because we're pursuing the 1983. You were, you were, now it's 1983. It wasn't before. It always, respectfully, Your Honor, it always was. Bivens was the alternative claim that we filed in our complaint. And I know a number of other plaintiffs pushed that claim, but that was not us. And that's why it's not on appeal. And so... District courts have to decide what's presented. They don't, they don't, they don't have to read the lawyer's mind. And, well, this is, this is just a pushback alternative, and I can ignore that, and so forth. But the general rule is that, that discovery should be afforded parties, that the parties should have that opportunity. And if that's the general rule... The court always has discretion to limit discovery to particular issues that needed, need advanced decision. And the court can abuse that discretion if it denies the party the opportunity to then, you know, to, to support the very thing that it then says it didn't provide. You're not, you're not showing me an abuse of discretion. You can't answer Judge Strass' question. Well, you know, I was trying to talk, to answer about... I mean, you don't need to depose her on the state, on the state actor question. I do, Your Honor. I need to depose her. I need to depose the people that she worked with. The, the, all of the state's evidence, Your Honor, I see my, my time is up. Would you like me to, to finish, or? Well, yes, sir. Okay. So the, in addition to Officer Weicker, there was her supervisor at the St. Paul Police Department and on the task force, John Vandemer. We wanted the opportunity to depose him to talk about how this task force worked, this, this joint task force. We wanted the opportunity to depose the officers that she, that we're alleging she caused to arrest Yassine, the, the Minneapolis police officers. We didn't have that opportunity. We didn't even know who these folks were in some cases. And that's why, Your Honor, we asked for discovery. Thank you. Mr. Himmelfarb. May it please the court, Edward Himmelfarb with the Department of Justice representing Heather Weicker, who was a federally deputized officer on the federal task force that was investigating federal crimes. The only issue, as the court mentioned before, the only issue on this appeal is. Does the Department of Justice consider this a question of law for the court? Absolutely, Your Honor. Or a question of fact for the jury? Yes. And I could take, if the court is a minute, I could take you through this. I could take you through the factors that show that, that she was acting under color of federal authority and not under color of state law. But no, it's, it's a question of law for the court, not a question of fact for the jury. That's right. Right? Yes. Okay. Okay. But I think the, you know, the background. I don't think you said that in your brief, which would have been helpful. Oh, I'm sorry, Your Honor. But yes, that's, that's the way it should be approached. There are several factors here. First, as I said, she was federally deputized when she took these actions. She was on a task force that was investigating federal sex trafficking charges. That task force had secured indictments of 30 individuals on federal charges. She was calling from Nashville, where the, where the investigation was located. At the time she called, she was in the conference room with the lead federal prosecutor and members of the task force. She identified herself to Officer Beeks as an FBI task force officer. She was calling him about a federal witness in that federal investigation. Later on that evening, two FBI agents arrived at the scene in Minneapolis and helped Officer Beeks interrogate, question the participants in the fight and the witnesses. After Yassine and her friends were arrested by Officer Beeks, Officer Weicker swore out a federal complaint and had them transferred into federal custody. Then they were, Yassine and Ahmed were both prosecuted by a federal prosecutor in federal court on federal charges. So all these factors combined, I think, make it pretty clear that she was acting under color of her federal authority. Also, I think her theory of the case is that Weicker was lying to Officer Beeks to protect the federal witness in that investigation. You can see that from her complaint. In paragraph 24 of the complaint on page 20 of the first volume of the appellant's appendix, that's what her theory of the case is, that Officer Beeks lied to protect the witness, Muna Abdul-Qadir, who was part of what they called the manufactured human trafficking case, I believe is the phrase they used. So her motivation for allegedly lying to Officer Beeks was to protect the federal witness in the federal investigation. I think all of that is pretty undisputed, the basic facts are, but there are some other things that are on the other side of the ledger, the state ledger. One is, you're right, she introduced herself as an FBI task force officer, but in the same sentence, my recollection is she also said, I'm a St. Paul police officer. Does that pose a problem? No, Your Honor, it doesn't, because in federal state joint task forces, the whole idea is that you have state and local officers, and they're all federally deputized, and what the FBI says is they federally deputize them so they can exercise the federal authority. So even if they're technically a state officer or a local officer at the same time, which they are, because they're dual status, they're exercising federal authority in connection with their work on the task force. What about the fact that she used the Miranda form that she had as a St. Paul police officer? Well, I don't think that makes much of a difference, Your Honor, because Miranda warnings are Miranda warnings. It doesn't really matter which form, she could have made up her own form, and so long as she gave the correct warnings, it would have satisfied that. She was talking to Muna Abdul-Qadir at the time, the federal witness, and her concern was that she wanted Muna to know that if she lied to her, to Liker, she could be prosecuted under federal law, like 18 U.S.C. 1001. So that's the purpose of the reading of the Miranda rates. So that also is a federal matter, Your Honor. There's one other thing that bothered me a little bit, which is she was talking to another state of Minnesota officer, Officer Beeks. Now, different jurisdiction, right? But I wonder if she had more credibility, and maybe this is just too weak in the government's mood, but more credibility because she was a state of Minnesota peace officer versus some member of a federal task force that's operating in Tennessee clear across the country. I don't know, Your Honor. I can't say as a general matter because maybe state officers think that or respect federal officers more. I don't know whether they do. Maybe they disrespect them. I honestly can't say about that. But if you look at the beginning of the police report filed by Officer Beeks, it says that it was brought to my attention by FBI agent Liker. Now, that's technically not correct. She was deputized by the FBI to be a Deputy Special U.S. Marshal, but it does show that she identified herself as a federal agent at the time of this phone call. Now, let me ask you this. So if we were to treat this as a fact question, which is what opposing counsel, and I know that the Department of Justice has a different view, wouldn't there be a genuine issue of material fact? I just laid out three facts that sort of hint and kind of go the other way. So if we were to send this to a jury, maybe a reasonable jury could determine that she was acting as a state officer, or do you think all of the evidence just points in one direction here? Well, number one, I think the overwhelming majority of the evidence points in that direction. Number two, we're talking about somebody who is presumptively acting as a federally authorized officer at the time, and to take that person out of her federal authority and convert her into state authority requires something more than a few technical minor things. And that goes to the 56D issue as well, because the court properly exercised its discretion on that, because, number one, it was a qualified immunity case, and unless there's some really important reason not to decide that right away, discovery should not be advanced. The second reason is that in this case there were criminal trials of Yasin and Ahmed. There was a huge record. In cases where you have pre-discovery summary judgment motions in a qualified immunity case, it's very rare that you have such a huge record available to the parties, and both parties have access to this record. And you'll see, if you look at their appendix in this case, you'll see a lot of that criminal record and excerpts of it, but still a lot of it is in there. So there's plenty of information available to the parties in district court. One thing I'd like to point out also is that there's a very good parallel case in here in the Sixth Circuit called King, which we cited several times in our brief. And if you go to page 433 of that decision, what the Sixth Circuit says is that the nature and character of a cooperative federal state program is determined by the source and implementation of authority for the program, not for the particular work that the agency chooses and the exercise of its authority to perform on a given day. And so in that case you had a federally deputized state or local officer enforcing, attempting to enforce a state arrest warrant, and the court held that that was under a cover of his federal authority. But they reversed qualified immunity for the defendant in the Federal Tort Claim Act case. Well, there are other issues, obviously, Your Honor. If you look at that, that's a very long decision. Based on the judgment, based on the judgment. And the issue of color of state law comes at the very end of that opinion. So there are many other issues. In fact, it went to the Supreme Court on a different issue. If the court has questions, I'd be happy to try to answer them. And otherwise, I will just ask the court to affirm this decision. So if Weicker was on a frolicking detour vis-à-vis her federal authority.  If Weicker got the others arrested instead of her informant or witness. Yes. To do her a favor. Yes. And keep her in the fold, so to speak. Which would be, I said frolic and detour. It would not be within the four corners of what the Department of Justice would have said or was appropriate. Your Honor, let me start by saying that we don't believe that that happened. No, I know. But if that did happen, that goes to the merits of the case. Okay. As opposed to the color of state law versus color of federal law. And I think the distinction between those two aspects should be kept in mind. It should be whether it was action within the scope of her authority. And how far outside the authority? If she's misusing the authority but not acting outside it, is that? Your Honor, I understand your point, I think. But let me say that in a straight Bivens case, you have a Bivens case against a federal officer. There's no question about it. This is just a federally employed officer. That person who committed maybe a hypothetical commits a constitutional violation. That person is obviously acting outside the scope of authority but still acting under color of the federal law. So I think the same thing would be true here. Frankly, I think there was for the arrest part of the claim, I think this is almost four square Bivens on the facts. But it was dismissed and is not appealed. That's right. On the prosecution part of the claim, it's just like what we decided in FARA. That's right, Your Honor. I think that's right. But I think it's ironic as I reflect on what I think I understand of the case, is that the decision to go with 1983 may have on the arrest part of the case, arrest and detention, may have sacrificed a cognizable Bivens claim. Your Honor, with respect, I think that the Ahmed decision of this court actually precludes a Bivens claim here because Yassin and Ahmed were, and Muhammad also, were all involved in the same set of facts on June 16, 2011. I think so the decision in that case, I believe, precludes a Bivens claim here. You mean Ahmed and St. Louis? No, Ahmed. Oh, okay. Oh, I know. Yes, okay. I know the Ahmed. Yes. Yes. So I don't think that you really have a Bivens remedy here, but I do want to point out that if you're suing a federal official acting under color of federal authority, Bivens is your remedy whether you have it or not. As the Supreme Court said in its Abbasi decision, it's really a matter for Congress to decide whether you should have that remedy or not, and that's why the court in the last 40 years has been limiting Bivens. Again, I'd like to offer to try to respond to questions the court has, but otherwise we'd ask the court to affirm. Thank you. Thank you. I'm going to use your time. I'll give you a minute if you'd like to respond to anything. Thanks, Your Honor. I don't want a lawyer to say, you know, do an experiment. Your Honor, I would point out that the limit of special deputation authority that Heather Weicker signed specifically excluded her. So the limitation of special deputation specifically excluded her from protecting persons under federal assault statutes or investigating other Title 18, which is the federal criminal code, violations. She had extremely narrow authority, and this document itself, which the court didn't even try to grapple with, the district court, that is, limited her federal authority to only seeking and executing arrest and search warrants supporting a federal task force. That's it. On this record alone, we already have enough to proceed under 1983. So you think that the Sixth Circuit in King was wrong? No, I think that the facts are very different than the Sixth Circuit decision in King. I have a very familiar case. The passage read, which I had highlighted myself, passage that counsel read about if you're, well, protecting a witness was not outside her limited authority. I think it was, Your Honor. But my time is, my extra time is expired. Thank you very much. What's your best case for a was? Just the four corners of what you read from? No, it's the plethora of cases interpreting the Supreme Court's Lugar decision and others that indicate that this is a fact-bound inquiry, and dual authority can certainly result in 1983 action. Thank you. Thank you, counsel. The case has been well briefed and argued, and we'll take it under advisement.